IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

DONALD HARTMAN, Register No. 534307, )
)
          Plaintiff, )
)
          v. )   No. 06-4109-CV-C-NKL
)
DAVE DORMIRE, et al., )
)
          Defendants. )

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

On October 12, 2006, plaintiff Hartman filed a motion for release from confinement in administrative segregation. By separate motion, he requested the court to subpoena Rameshlal M. Rawlani, M.D., to testify regarding plaintiff's mental health status. Plaintiff alleges that he suffers from major depression caused by a chemical imbalance. He states he is claustrophobic, he has cut and bitten himself, and his condition is deteriorating because of his confinement in administrative segregation. In light of the discussion at a previous conference and plaintiff's allegations that his condition is deteriorating, the court has treated plaintiff's motion for release as a request for a preliminary injunction.

An evidentiary hearing was held on November 1, 2006. Plaintiff appeared by video conferencing and testified. Dr. Rawlani appeared in person and testified regarding plaintiff's psychiatric treatment and condition.

Although the federal courts have broad power to grant or deny equitable relief in a civil rights action, Holt v. Sarver, 442 F.2d 304 (8th Cir. 1971), a "large degree of discretion is vested in the trial court" in determining whether an injunction should issue. American Home Investment Co. v. Bedel, 525 F.2d 1022, 1023 (8th Cir. 1975), cited with approval in Rittmiller v. Blex Oil, Inc., 624 F.2d 857 (8th Cir. 1980). See also Cole v. Benson, 760 F.2d 226 (8th Cir.

1985).  In Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109 (8th Cir. 1981), the court delineated the factors to be considered in ruling a motion for preliminary injunctive relief.

> Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the plaintiff; (2) the state of balance between such harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest.

Id. at 113.  Further, "[t]he dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently-existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights."  Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1981) (quoting Holiday Inns of America, Inc. v. B. & B. Corp., 409 F.2d 614, 618 (3d Cir. 1969)).  Thus, the inquiry is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."  Dataphase, 640 F.2d at 113.  The burden of proof is on the party seeking injunctive relief.  United States v. Dorgan, 522 F.2d 969, 973 (8th Cir. 1975).

Additionally, "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."  Devose v. Herrington, 42 F.3d 470 (8th Cir. 1994).

At the conference, the court was unable to see by video conferencing the bite marks, cut marks and scars on plaintiff's arms.  Plaintiff testified they were there, and for purposes of the hearing and motions, the court assumes they were there as plaintiff stated.  Plaintiff said he had been in administrative segregation since 2001 and that he wanted to be moved to a psychiatric treatment center or hospital where he can get appropriate treatment and medication.  He acknowledged that he is currently on Prozac and Elavil.

Plaintiff's medical file was admitted into evidence and Dr. Rawlani was called to testify. Dr. Rawlani is the Chief of Psychiatry at Jefferson City Correctional Institution and a licensed psychiatrist.  He is also a Senior Psychiatrist at Fulton State Hospital.  He has treated plaintiff since October 2004 and noted that the diagnosis in plaintiff's medical records changed somewhat depending on plaintiff's symptoms.  Nevertheless, Dr. Rawlani stated plaintiff has antisocial personality disorder and/or borderline personality disorder.

Plaintiff's records and the testimony indicate that he lived with his mother until he was 8 years old. She was unable to handle him and he was placed in foster care. Foster home placement was unsuccessful and he was moved to a juvenile facility. Ultimately he ended up incarcerated. While incarcerated, he has been at several institutions and hospitalized in the Biggs Unit at Fulton State Hospital on two occasions. He was last released from the Biggs Unit in March 2002. His medical records from March 1999 to October 2006 show 325 treatment visits and two hospitalizations.

Dr. Rawlani testified there is no treatment for his condition, but there are medications and methods to treat his symptoms. He indicated plaintiff has been on the available medications. He said that within a few months of starting those medications, plaintiff will complain they are not working and will request a change of medications. In many cases, the change has been made.

Dr. Rawlani indicated plaintiff tends to act out toward others, but has not had a conduct violation in seven months. Plaintiff demands and gets more attention than other patients, but talks nonstop during medical visits so does not obtain optimal benefit from the visits. One feature of a personality disorder is that when the patient cannot act out towards others, he will hurt himself for a release of anger. Dr. Rawlani had not seen plaintiff's arms because of the manner in which psychiatric visits are conducted, but did not dispute plaintiff had bite marks and scars from cutting himself with light bulbs.

Dr. Rawlani clearly testified plaintiff was being provided appropriate psychiatric treatment and his confinement in administrative segregation was not contraindicated by his mental health impairments. He stated plaintiff's housing assignment was not seriously detrimental to plaintiff's mental health. Further, plaintiff's claim of claustrophobia did not require a change in his housing assignment or medications.

It appears that sometime shortly after his return from the Biggs Unit in 2002, plaintiff became violent and assaulted guards. He was placed into administrative segregation following that incident.

Dr. Rawlani said he had obtained a second opinion regarding plaintiff's treatment and condition. He stated plaintiff was a very difficult patient, and efforts were regularly made to talk with him and to try to calm him down. Plaintiff was advised that he needed to alter his behavior.

In Dr. Rawlani's opinion, plaintiff is not suicidal but is seeking attention. His mental condition does not warrant hospitalization, but his acting out in anger most likely prevents his placement in a less restrictive housing environment.

Given this evidence and the standards for granting preliminary injunctive relief as set forth in Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d at 113, plaintiff's request for release from administrative segregation will be recommended denied. The evidence does not show plaintiff will be irreparably harmed if not immediately removed from administrative segregation. His prior behavior indicates he becomes a threat to others if placed in a less restrictive environment and his treating physician does not find hospitalization is medically indicated.

Plaintiff has the ability to control his behavior and his symptoms are being treated with medication. Although plaintiff claims he wants additional or different treatment, his behavior suggests he wants attention and his own way. When he does not get what he wants, he acts up. Nevertheless, the evidence indicates plaintiff's condition does not warrant the relief he seeks in his motion of October 12, 2006.

On September 13, 2006, plaintiff requested defense counsel be held in contempt for failing to respond to court orders regarding waiver of service and plaintiff's request for transfer or treatment. Counsel has entered an appearance on behalf of defendants and service of process does not appear to be an issue in this case. Further, on September 5, 2006, defendants filed a timely response to the court's order of August 24, 2006.

For these reasons, it is

ORDERED that plaintiff's motion of October 12, 2006, for a subpoena to be issued to Dr. Rawlani is denied as moot. [31] It is further

ORDERED that plaintiff's renewed motion of October 19, 2006, for appointment of counsel is denied for the reasons set forth in previous orders. [35] It is further

RECOMMENDED that plaintiff's motion of October 12, 2006, for release from administrative segregation, treated as a motion for preliminary injunctive relief, be denied. [32] It is further

RECOMMENDED that plaintiff's motion of September 13, 2006, for an order of contempt be denied. [23]

4

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within twenty days. The District Judge will consider only exceptions to the specific proposed findings and recommendations of this report. Exceptions should not include matters outside of the report and recommendation. Other matters should be addressed in a separate pleading for consideration by the Magistrate Judge.

The statute provides for exceptions to be filed within ten days of the service of the report and recommendation. The court has extended that time to twenty days, and thus, additional time to file exceptions will not be granted unless there are exceptional circumstances. Failure to make specific written exceptions to this report and recommendation will result in a waiver of the right to appeal. See L.R. 74.1(a)(2).

Dated this 29th day of November, 2006, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge