# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

DONALD HARTMAN, Register No. 534307,    )
                                                              )

                                 Plaintiff,         )

                                                               )

                                  v.             )         No. 06-4109-CV-C-NKL

                                                              )

DAVE DORMIRE, et al.,                )

                                                                 )

                                  Defendants.     )

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Donald Hartman, an inmate confined in a Missouri penal institution, brought this case under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its corresponding jurisdictional statute, 28 U.S.C. § 1343. This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

Plaintiff is incarcerated with the Missouri Department of Corrections where he has been receiving ongoing mental health care since 1999. Plaintiff complains that defendants have been deliberately indifferent to his mental health needs because they have misdiagnosed his mental health condition, and have forced him to remain confined in long-term administrative segregation due to his mental illness. Plaintiff also alleges that defendants' actions in confining him to administrative segregation violate the Americans with Disabilities Act (hereinafter ADA). Plaintiff wants to be transferred from Jefferson City Correctional Center (JCCC) to the Biggs Center at Fulton State Hospital.

Defendants Dormire, Long, and Wood argue that plaintiff is receiving necessary medical and mental health care, and that his personal disagreement with his diagnosis and treatment fails to create a dispute of material fact to support a claim of deliberate indifference. Further, defendants argue that plaintiff remains confined to administrative segregation because of his serious behavioral problems, and not his underlying mental illness. Finally, defendants argue that the ADA is not applicable to plaintiff's claims because plaintiff does not have a qualifying disability and is not being discriminated against because of any alleged disability.

## Summary Judgment Standard

Fed. R. Civ. P. 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op., 838 F.2d 268, 273 (8th Cir. 1988).

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. Celotex, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." Hass v. Weiner, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

## Mental Health Treatment

"It is well established that the Eighth Amendment prohibition of cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs." Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000). To succeed on his Eighth Amendment medical claims, plaintiff must allege and prove, by a preponderance of the evidence, a "deliberate indifference to a serious medical need." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Prison officials may not be held liable under 42 U.S.C. § 1983 for mere negligence in the treatment of an inmate. Id. The standard for "deliberate indifference" includes an objective and a subjective component. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Thus, to prevail on his claims, plaintiff must show 1)

2

that the medical deprivation was objectively sufficiently serious; and 2) that prison officials subjectively knew about the deprivation and refused to remedy it. See Grayson v. Ross, 454 F.3d 802, 808-09 (8th Cir. 2006). A serious medical need is defined as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)); see also Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997) (citing Camberos v. Branstad, 73 F.3d at 176).

In the instant case, plaintiff's medical records show that he has a serious mental health condition requiring treatment. Plaintiff's medical records also show that he has continuously received treatment and care at JCCC for this condition. Plaintiff's treating doctor since 2004, Dr. Rawlani, is the Chief of Psychiatry at JCCC and a Senior Psychiatrist at Fulton State Hospital. Dr. Rawlani testified before this court in an earlier proceeding for preliminary injunctive relief held in this case, and has submitted an affidavit regarding plaintiff's psychiatric treatment and condition. Dr. Rawlani states plaintiff has an antisocial/borderline personality disorder[1], and that such condition is monitored, treated and regularly reviewed by mental health officials at JCCC. Dr. Rawlani states there is no curable treatment for plaintiff's condition, but medications can help alleviate the symptoms. Plaintiff's medical records show that medications to alleviate his symptoms have been continually prescribed during his incarceration. Plaintiff acknowledges he is currently on Prozac and Elavil. Dr. Rawlani states that not only does plaintiff receive adequate care and treatment, he also receives more attention than most patients because of the high number of Medical Service Request Forms he submits. While incarcerated, plaintiff has had more than 325 mental health visits, and has been hospitalized twice.

Plaintiff has no evidence to support his allegations that he is being denied mental health treatment. His medical records and the testimony of Dr. Rawlani reflect that plaintiff has received extensive care. Plaintiff's assertion that he has been incorrectly diagnosed and is being

---

[1]Dr. Rawlani's primary diagnosis of plaintiff is personality disorder. He notes, however, additional diagnoses reflected in plaintiff's medical records have changed somewhat depending on plaintiff's symptoms.

denied what he believes to be appropriate treatment fails to support a submissible case for denial of mental health care. A mere difference of opinion between plaintiff and his treating physician about what treatment is appropriate does not give rise to a colorable claim under section 1983. Warren v. Fanning, 950 F.2d 1370, 1373 (8th Cir. 1991); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990); Courtney v. Adams, 528 F.2d 1056 (8th Cir. 1976). Likewise, disagreement with a diagnosis is insufficient to state a claim. Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993). Nothing in the Eighth Amendment prevents doctors from exercising independent medical judgment. Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Additionally, the court notes that the named defendants in this action are not medical professionals, but rather are Department of Corrections administrative and supervisory personnel who cannot be held liable when they rely on trained mental health professionals. Prison officials who lack medical expertise cannot substitute their judgment for a medical professional's prescription and are not liable for the medical staff's diagnostic decisions. Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002). The records in this case show defendants Dormire, Woods and Long have relied on the expertise of Dr. Rawlani and other mental health staff; therefore, they cannot be held liable for plaintiff's assertions that he has been misdiagnosed or is not receiving appropriate mental health treatment.

**Administrative Segregation Assignment**

Plaintiff asserts his assignment to administrative segregation was done with deliberate indifference to his health and safety. The conditions under which an inmate is confined are subject to scrutiny under the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious,' . . ." Id. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, a prison official must have a sufficiently culpable state of mind, such that they were subjectively deliberately indifferent to the prisoner's health or safety. Id.; see also Beyerbach v. Sears, 49 F.3d 1324 (8th Cir. 1995). Therefore, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. The Eighth Amendment requires prison officials to provide humane conditions of confinement,

4

including adequate food, clothing, shelter and medical care.  Id. at 832.  However, the Constitution does not mandate comfortable prisons.  Id.  Claims regarding conditions of confinement are viable when a prisoner is confined in conditions which pose a substantial risk of serious harm or where he being denied the minimal civilized measure of life's necessities. Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998).

In applying plaintiff's assertions to the standards set forth in Farmer, there is no evidence to support that plaintiff's assignment to segregation put him at a substantial risk of serious harm. There is no evidence that plaintiff was denied humane conditions or that administrative segregation was harmful to his mental health condition.  Plaintiff's medical records reflect that Dr. Rawlani, plaintiff's treating doctor, has consistently determined plaintiff's assignment to administrative segregation is not counter indicative of his mental health condition.  Considering Dr. Rawlani's determination and the lack of evidence showing administrative segregation was inhumane, there is no basis for a finding that defendants, Department of Corrections administrative and supervisory staff, were deliberately indifferent to plaintiff's mental health condition in assigning him to administrative segregation.

### ADA Claims

Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, prohibits qualified individuals with disabilities from being excluded from participation in or the benefits of the services, programs, or activities of a public entity.  The Supreme Court has held that Title II of the ADA applies to prisons.  Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206 (1998).  A qualified individual with a disability under the ADA is defined as any person who "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).  To state a prima facia case under the ADA, the plaintiff must show:  1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; 3) he was excluded from the benefit due to discrimination based on his disability.  Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999) (citing 42 U.S.C. § 12131 *et seq.*)

In the instant case, plaintiff asserts that he should be assigned to Fulton State Hospital or general population at JCCC, and that his assignment to administrative segregation violates the

5

ADA because it is based on his mental health problems. Plaintiff asserts his diagnosis of personality disorder is a qualifying disability under the ADA.

Plaintiff has come forward with no evidence to support his assertion that he has a qualified disability under the ADA, other than his conclusory assertions. Nonetheless, even assuming that plaintiff's mental health diagnosis is a qualified disability under the ADA, plaintiff has come forward with no evidence to support that he is otherwise entitled to assignment in general population at JCCC or to Fulton State Hospital, or that he is being discriminated against because of his mental health diagnosis of personality disorder. Rather, plaintiff's records show serious behavioral problems have resulted in his being ineligible for release to a less restrictive housing (general population), and that his treating mental health doctors have determined that his condition does not warrant hospitalization at Fulton State Hospital.

Plaintiff's claims fail to support a prima facia case under the ADA.

### Conclusion

Plaintiff has failed to come forward with material evidence to support his claims that his constitutional rights and rights under the ADA have been violated. There is no dispute of material fact requiring this case to go to trial. Based on the undisputed material facts in this case, no reasonable jury could find plaintiff's rights under the ADA and the Constitution were violated. Without a constitutional violation, the issues of immunity need not be reached by the court. Defendants are, therefore, entitled to judgment as a matter of law.

IT IS, THEREFORE, RECOMMENDED that defendants' motion for summary judgment be granted and plaintiff's claims be dismissed. [122] It is further

RECOMMENDED that plaintiff's motion for judgment on the pleadings be denied as moot. [139]

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within twenty days. The District Judge will consider only exceptions to the specific proposed findings and recommendations of this report. Exceptions should not include matters outside of the report and recommendation. Other matters should be addressed in a separate pleading for consideration by the Magistrate Judge.

The statute provides for exceptions to be filed within ten days of the service of the report and recommendation. The court has extended that time to twenty days, and thus, additional time

6

to file exceptions will not be granted unless there are exceptional circumstances.  Failure to make specific written exceptions to this report and recommendation will result in a waiver of the right to appeal.  <u>See</u> L.R. 74.1(a)(2).

Dated this 28th day of January, 2008, at Jefferson City, Missouri.


/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge